## No. 207.

## A. Escudé *v.* Lacoste & Lapouyade.

1. This Court will follow the jurisprudence, as fixed and established by the Supreme Court of this State.
2. Where A endorses in blank a promissory note, drawn by B to the order of C, parol or other evidence, *aliunde*, is admissible to show actual intention— whether A signed as endorser, or surety.
3. Under the authorities in this State, in such a case, in the absence of explanatory evidence, the contract will be presumed one of surety.

4.  Where, therefore, proof was not administered showing that a contract of endorsement was intended, A was held as surety; and failure to protest and notify did not release him.

*Appeal from Civil District Court Division D.   Rightor, J.*

*W. E. Murphy* for plaintiff and appellee.

*A. Voorhies* for defendant and appellant.

McGLOIN J.—In this case, the question is, whether one, who has endorsed, in blank, a promissory note, that has been made payable to another, that other being the payee, is liable as a surety, joint maker or endorser.   Escudé, the payee, is plaintiff herein, and Lacoste, one of the defendants, the drawer, while Lapouyade, the other defendant, has placed his name thereon, as stated.   There has been no proof of demand, protest or notice, and Lapouyade, claiming to be merely an accommodation endorser, contends that he has been released from all liability, by reason of plaintiff's laches.

The doctrine seems firmly settled in this State, that where one, not party to a bill, places his name thereon, parol or other evidence *aliunde* may be admitted, in order to ascertain what was the real intention of the parties.   And further, it is settled, also, that in the absence of proof the presumption is, that the contract of the party, so signing, is that of surety and not of an endorser, simple and pure, and that neither protest, nor notice thereof, is necessary in order to hold.   Cooley vs. Lawrence, 4 Martin La. 639; Guidry vs. Vives, 3 Martin La. N. S. 659; Smith vs. Gorton, 10 La. 374; Hiram Gilbert et al. vs. Cooper, 4 Rob. La. 161; McGuire vs. Bosworth, 1 La. An. 248; Penny vs. Parham, 1 La. An. 274; McCausland vs. Lyons, 4 La. An. 273; Drew vs. Robinson, 2 La. An. 592; Chorn vs. Merrill & Bracken, 9 La. An. 533; Weaver vs. Marvell, 12 La. An. 518.

We have already declared that this Court will endeavor to follow the authority of the Supreme Court of this State, in all cases where a proposition of law has been entirely and finally determined by the decisions of that tribunal, and that new

departures in matters of interpretation will be left to that Court to inaugurate. Acting upon this principle, we must accept, in this case, the voice of the many authorities cited, and adjudge the contract of Lapouyade to be one of surety alone, and hold him not discharged by the failure to duly protest.

We reserve, however, in all cases the right, while applying the law, as interpreted by the Supreme Court, to express our differences in opinion, whenever such differences arise, from the principles laid down in any precedent or precedents so applied.

In this particular case, it must be, of course, conceded that an endorsement, such as that in question, is not, of itself, fully expressive or determinative of the intention of the parties at the time it was given and taken. Viewing simply the note and its signatures, it may be that Lapouyade intended to bind himself absolutely, and as if he were a joint maker; or to guarantee absolutely the debt; or to assume, towards the payee, only the restricted or conditional obligation of an endorser; or even that he contemplated and was solicited simply to accommodate the payee, who was to place his own endorsement as the first, before negotiating for his own account and benefit. In view of the fact, that such an endorsement, upon a negotiable instrument, leaves the mind in doubt between all of these interpretations, it is evident that the endorsement alone does not constitute such a certain and explicit contract, so as to prevent collateral or outside enquiry in order to ascertain the intent. To this extent, that is, the admissibility of evidence *aliunde* to solve such a doubt, the authorities seem generally agreed, at least in cases where only original parties are before the Court, as in this. See Daniels on Negotiable Instruments, Ed. 1879, vol. I, § 710, p. 562.

It is where there has been no evidence *aliunde*, that the Courts, compelled in some manner to dispose of all questions, have had to chose between the presumptions already enumerated, and the authorities upon the question are divided, so that some are to be found supportive of each of these theories of determination. The interpretation, which holds such endorser as a joint maker, has been adopted by the Supreme Court of the United States. Good

vs. Martin, 95 U. S. (5 Otto) 92. It also seems to have the sanction of the Courts in Vermont, Massachusetts, Delaware and other States. See Daniels on Negotiable Instruments, vol. I, § 713, note 1 to p. 565. So, that, *prima facie*, the liability of one, who so writes his name upon commercial paper, is as *second endorser*, the apparent payee being first, and liable to him as such, has been adopted in several cases. See Daniels, vol. I, p. 566, note 3. In our State, as already shown, it is settled that the contract is presumably one of surety, and this has also been determined in others of the States. See Daniels, p. 566, note 1.

In the first place, it would seem to us that, particularly under the law of this State, the interpretation which fixes liability upon Lapouyade as a simple surety, is not admissible, for in chosing among conclusions, as in this case, where there is no evidence to give us certainty (and where, if there was anything particular done or said beyond the execution and signing of the paper, it has not been shown), the Court is dealing with inferences alone. In other words, it is establishing a contract by presumptions. To make the idea still more clear, by means of variation of our statement, the Court, in absence of *expression*, is striving to ascertain what was *implied* by the acts alone of parties. This, however, it seems to us was not open for them to do, because Article 3039, La. C. Code, prohibits it.

"Suretyship cannot be presumed ; it ought to be expressed, and is to be restrained within the limits intended by the contract."

But, passing beyond that Article, we must recognize the fact, that the *form* which parties have chosen to give the contract must have great weight in determining intention. Had Lapouyade, in this case been expected simply to secure the debt evidenced by the note sued upon, he could have so written, and the contract would have had the form familiar to the Courts, where simple surety is in question. But the parties in this case have not so shaped the contract, but they have thrown it into the shape of commercial paper, and the legitimate inference is, that the intention was to place the transaction under the sole government of the *lex mercatoria*. And this applies to all parties,

endorser, payee and maker. It was competent for Lapouyade in this case to have declared, expressly, that he was willing to hold himself upon this note, but only as an endorser, with the rights given by the commercial law to an endorser. This, if written over his signature, would protect him, even though he were not technically an endorser; that is, even though the title to the note was never intended to pass through him. This would be so, by reason of the liberty of contract; for men may grant, or reserve, whatever rights they please, provided the right granted or reserved is not criminal or contrary to public law or policy. The back of commercial paper is the place reserved by universal usage for endorsements, as the face and foot is that which is reserved for drawers. It seems to us, that the place where Lapouyade has placed his name indicates his intention to assume the character usually assumed by all whose names figure upon the back of such paper; and the fact that he has abstained from signing upon the face, and at the foot of the note, excludes the presumption that he intended to bind himself as maker, or to the same extent as a maker.

That the manner of placing his name upon the note precluded absolutely the idea that he was to figure as a real endorser, does not militate against the position that, by his act, he reserved the rights of an endorser, for he might have made this reservation, by expression, and what one can accomplish by expression, he may do, if the law forbid not, by implication. Nor is the infer- ence an absolute one, that Lapouyade was not to stand in the line of title, for the intent may have been that Escudé was to endorse before him, either with or without recourse.

Nor is it, to our mind, an argument that Lapouyade gave to Escudé, the opportunity of writing above his (Lapouyade's) name, an unconditional guarantee. The force of this argument can only arise from the supposition that Lapouyade intended Escudé to do, what he put it in the power of the latter to perform. But, the force of this conclusion is destroyed by the fact, that no such guarantee has been written over the name, and since Escudé not has availed himself of this advantage, it is to

be inferred that it was not accorded to him to do so, and even further, perhaps, that he was forbidden so to do.

Were this cause, therefore, a new one, we would declare Lapouyade released, but we follow and apply the law as the same has been interpreted by the Supreme Court of this State.

Judgment affirmed.

### CONCURRING OPINION.

ROGERS, J.—I have preferred to rest my concurrence upon the decisions rendered in this State on the questions involved and have not gone further in the investigation, and so am not prepared to either concur or differ with my colleague in the views expressed by him, in opposition to the soundness in principle of the precedents followed.